# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

MITCHELL R. BANKS, :

          Plaintiff,

-vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

          Defendant. :

Case No. 3:09-cv-234

District Judge Walter Herbert Rice
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict

(now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial

resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed applications for SSD and SSI on October 7, 2004 alleging disability from September 11, 2004, due to chronic pulmonary disease. (Tr. 73-75; 647-49; 83). Plaintiff's applications were denied initially and on reconsideration. (Tr. 38-39; 650; 654). Administrative Law Judge Thaddeus Armstead held a hearing and a supplemental hearing, (Tr. 667-85; 686-743), following which he found that Plaintiff is not disabled. (Tr. 18-30). The Appeals Council denied Plaintiff's request for review, (Tr. 7-9), and Judge Armstead's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Armstead found that Plaintiff has severe chronic obstructive pulmonary disease, vertebrogenic disorder of the spine, depression, and a history of alcohol abuse, but that he does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 20, ¶ 3; Tr. 21, ¶ 4). Judge Armstead also found that Plaintiff has the residual functional capacity to perform a limited range of light work. (Tr. 23, ¶ 5). Judge Armstead then used section 202.18 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 29, ¶ 10). Judge Armstead concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 30).

Between September 14, and 17, 2004, Plaintiff was hospitalized for an exacerbation of his asthma. (Tr. 129-54). At the time of his admission, it was noted that Plaintiff had shortness of breath, chest pain with coughing, expiratory wheezing, prolonged expiration, and tachycardia. *Id.* Plaintiff was treated with medications and respiratory therapy and discharged on oxygen therapy and pulmonary treatments. *Id.*

Pulmonologist Dr. Smith assumed Plaintiff's care after his September, 2004,

hospitalization. (Tr. 195-98). Over time, Dr. Smith reported that Plaintiff appeared chronically ill, was short of breath just walking across the room, was barrel chested with an increased AP diameter, had mildly labored breathing with long sentences, and decreased breath sounds. *Id.* Dr. Smith also reported that Plaintiff had severe COPD, was a relatively young man with serious pulmonary problems, and that he encouraged Plaintiff to not resume smoking. *Id.* In June, 2005, Dr. Smith noted that Plaintiff smoked three cigarettes a day, that his PFT revealed moderate obstructive ventilatory defect with flow rates better than on past PFTs, and that Plaintiff had COPD. *Id.*

The record contains treating physician Dr. Randall's office notes dated April 24, 2003, through February 7, 2006. (Tr. 209-42). Dr. Randall reported on October 27, 2004, that he had treated Plaintiff since April, 2002, that over time Plaintiff had episodes of wheezing, that he had a significant debility in September, 2004, when he was hospitalized, and that he was on both maintenance and rescue medication to treat/prevent wheezing. *Id.* Dr. Randall also reported that Plaintiff's diagnosis was severe COPD/asthma, that his problems were relatively severe considering his relatively young age, and that he was completely disabled by shortness of breath with any exertion. *Id.*

Examining physician Dr. Danopulos reported on November 30, 2004, that Plaintiff has had asthma since childhood, quit smoking two months ago, smoked marijuana on and off, had an eleventh grade education, his chest PA dimensions were normal, and that his lungs revealed wheezing. (Tr. 155-70). Dr. Danopulos also reported that Plaintiff's chest excursions were diminished, expiration was prolonged, he was not using accessory muscles during respiration, there was no cyanosis and that there was no clubbing of the fingers. *Id.* Dr. Danopulos noted that Plaintiff had full ranges of motion of his arms and legs, a normal gait, his paravertebral muscles

5

were soft and painless, normal straight leg raising, normal heel and toe walking, and that his neurologic examination was normal. *Id.* Dr. Danopulos also noted that ventilatory function study revealed a severe degree of restrictive and a mild degree of obstructive lung disease with positive bronchodilator effect. *Id.* Dr. Danopulos noted further that Plaintiff had moderately severe emphysema plus asthma, myalgias in the lumbosacral area, that his complaints of numbness and painful cramps on the left side of his body were probably the result of electrolyte imbalance, and that his epigastric area was painful to palpation indicating he may be suffering from chronic gastritis triggered from his alcohol abuse which he discontinued in 2002. *Id.* Dr. Danopulos opined that the objective findings were history of asthma which has continued for a long period of time, severe emphysema, numbness on the left side of his body which could not be evaluated properly or documented, lumbar spine myalgias and arthralgias, and chronic gastritis rule out chronic alcoholic gastritis. *Id.* Dr. Danopulos also opined that Plaintiff's abilities to perform any work-related activities like walking, lifting, and carrying were restricted maximally due to his continuous asthmatiform bronchitis with severe emphysema. *Id.*

Plaintiff was hospitalized May 1-4, 2005, for treatment of an acute exacerbation of chronic obstruction pulmonary disease. (Tr. 192-94). Plaintiff was treated with medications and oxygen therapy and was discharged with the diagnoses of COPD, acute and chronic bronchitis, atherosclerotic heart disease with previous myocardial infarction, history of tobacco abuse, noncompliance as to medicines, and atrial fibrillation. *Id.*

The record contains a copy of Plaintiff's treatment notes from Good Samaritan Hospital Ambulatory Care dated September 9, 2005, through November 30, 2006, where Plaintiff received treatment from Dr. Bhat. (Tr. 199-208; 335-81).). Dr. Bhat treated Plaintiff for COPD,

6

chronic pain, hyperglycemia, tobacco dependence, upper respiratory infection, and allergic rhinitis. *Id.* Over time, Dr. Bhat advised Plaintiff to stop smoking. *Id.*

Plaintiff was hospitalized in September, 2006, for treatment of a lung abscess. *See,* Tr. 341. Following that hospitalization, pulmonologist Dr. Patel treated Plaintiff and noted that Plaintiff had a long history of alcoholism and tobacco abuse. (Tr. 341-43). Dr. Patel identified Plaintiff's diagnoses as left lung abscess most likely secondary to alcoholism, reflux, and aspiration, rule out endobronchial lesion, tobacco abuse, alcohol consumption, chronic obstructive pulmonary disease, and hypertension. *Id.*

Dr. Bhat reported on January 25, 2007, that Plaintiff's diagnoses were hypertension, severe COPD, recent left lung abscess, chronic back pain on pain clinic follow-up, and depression. (Tr. 525-26). Dr. Bhat also reported that Plaintiff's status was good with treatment, that his abilities to stand/walk and sit were affected by his impairments, that he was able to lift/carry up to five pounds frequently, and that he was unemployable. *id.*

Plaintiff was hospitalized July 17-27, 2007, after experiencing chest pain. (Tr. 543-611). During that hospitalization Plaintiff was treated for COPD exacerbation and underwent a splenectomy and cholecystectomy. *Id.* In addition, Plaintiff developed delirium tremens. *Id.* Plaintiff was treated and released in good condition. *Id.* Dr. Patel continued to treat Plaintiff for his COPD butnoted that Plaintiff continued to smoke. (Tr. 466-70; 620-23).

A pulmonary function study performed in March, 2008, revealed evidence of severe obstructive lung disease with significant clinical response to bronchodilators, a severely reduced diffusing capacity, and findings which could represent emphysema with partially reversible airflow obstruction. (Tr. 643-46).

7

In addition to his pulmonary impairment, Plaintiff has a history of low back pain. In January, 2005, Plaintiff complained of low back pain with radiation down his leg and an associated feeling of weakness. (Tr. 220). A January 12, 2005, lumbar spine x-ray revealed mild degenerative spurring with slight retrolisthesis at L2-L3, L3-L4, and L4-L5. (Tr. 191). A March 7, 2005, MRI of Plaintiff's cervical spine multilevel degenerative disc disease with varying degrees of neural compromise at C3 through C7. (Tr. 187). A lumbar spine MRI performed on March 7, 2005, revealed degenerative changes without significant neural compression. (Tr. 188). An EMG performed on March 11, 2005, was normal. (Tr. 183).

Plaintiff subsequently received treatment from pain specialist Dr. Gomaa during the period September, 2005, through December, 2007. (Tr. 292-94; 297-334; 450-65; 527-40; 624-41). On July 22, 2006, Dr. Gomaa reported that Plaintiff had advanced degenerative disc disease in both his cervical and lumbar spines, his ranges of motion were reduced due to pain and muscle spasms, he was able to lift/carry up to ten pounds occasionally and five pounds frequently, stand/walk and sit each for two hours in an eight hour day and for less than thirty minutes without interruption, and that he needed to use a cane for ambulation. *Id.* Dr. Gomaa also reported that Plaintiff was not able to perform either light or sedentary work and that he would be absent from work more than three times a month due to his impairments or treatment. *Id.* Over time, Dr. Gomaa noted that Plaintiff exhibited some muscle spasm, reduced ranges of motion, tenderness, and multiple trigger points. *Id.*

A January 25, 2008, MRI of Plaintiff's lumbar spine revealed mild broad-based central disc protrusion affecting the L4-L5 level, annulus bulging at L3-L4, and anterior marginal osteophytes with prevertebral annulus bulging occuring at multiple levels particularly L3-L4. (Tr.

8

642).

In addition to his exertional impairments, Plaintiff has a history of mental impairments. Specifically, Plaintiff received mental health treatment at South Community, Inc. during the period June, 2006, through August, 2007. (Tr. 382-408; 430-49; 471-82). Plaintiff's treatment notes from that facility reveal that Plaintiff received counseling and medication services for depression and anxiety. *Id.*

A pulmonologist medical advisor (MA) testified at the hearing that Plaintiff did not have an impairment or combination of impairments that satisfies the Listings. (Tr. 711-24). The MA also testified that Plaintiff had severe COPD and disorders of the spine, was able to lift twenty pounds occasionally, ten pounds frequently, stand or walk for six hours in an eight hour day and sit for six hours, and that he had moderate environmental restrictions. *Id.* The MA testified further that Plaintiff's pulmonary function studies revealed moderate airway obstruction and did not reveal a finding of severe emphysema and that the MRIs revealed mild findings. *Id.*

A mental health MA testified at the hearing that Plaintiff did not satisfy any of the mental health Listings, could perform simple and detailed tasks, that the ability to perform semi-skilled jobs had not been eliminated by the record, and that he should not have strict time standards. (Tr. 726-36). The MA also testified that the record lacked support for either Plaintiff's claim that he was not drinking or to challenge that he continued to drink. *Id.*

The VE testified at the hearing that Plaintiff's past relevant work was light and unskilled and medium and skilled performed at the light level. (Tr. 736-41). The VE also testified that someone with the same age, education, and work experience as Plaintiff who is restricted to light work, up to semi-skilled tasks, no climbing ladders, ropes, or scaffolds, occasional bending and

9

stooping, no exposure to extremes of heat, cold, wetness, or humidity, obnoxious odors, fumes, and gasses, poor ventilation, and dust, and which did not have strict time standards was able to perform 30,000 light and semi-skilled jobs and 15,000 sedentary jobs in the economy. *Id.*

Plaintiff alleges in his Statement of Errors that the Commissioner erred by failing to meet his burden of proof at the fifth step of the sequential evaluation process because the VE identified only semi-skilled positions in response to Judge Armstead's hypothetical yet the VE failed to identify any transferable skills. (Doc. 8). Plaintiff also essentially alleges that the Commissioner erred by finding that he is capable of performing a limited range of light work and by failing to consider his impairments in combination. *Id.*

In support of his first Error, Plaintiff argues that the Commissioner erred by relying on the VE's testimony in determining that there is a significant number of jobs in the economy that he (Plaintiff) is capable of performing. Specifically, Plaintiff claims that the Commissioner did not satisfy his burden at step five of the sequential evaluation process because he found that Plaintiff is capable of performing semi-skilled jobs yet the VE did not identify any skills that Plaintiff has that are transferable. Plaintiff alleges that in failing to identify skills that are transferable to other work, the Commissioner failed to comply with 20 C.F.R. §§ 404.1568, 416.968[1] and Social Security Ruling (SSR) 82-41, 1982WL31389 (1982), and consequentially the matter should be remanded for additional findings.

In Sixth Circuit rejected a similar argument in *Wilson v. Commissioner of Social Security,* 378 F.3d 541 (6th Cir. 2004). In *Wilson*, the claimant argued that the ALJ's failure to

---

[1] 20 C.F.R. § 404.1568 addresses the issue of determining skills that can be transferred to other jobs in the context of applications for SSD while 20 C.F.R. § 416.968 addresses the same issue in the context of applications for SSI. The language in the two Regulations are similar if not identical.

10

identify his transferable skills at step five constituted reversible error. *Id.* at 549. The Sixth Circuit, however, held that an ALJ need not identify transferable skills when the VE's testimony identifies "specific jobs available in the regional economy that an individual with the claimant's limitation could perform... ." *Id.* The Court also determined that 20 C.F.R. §§ 404.1568 "does not explicitly mandate the enumeration of transferable skills at step five." *Id.* Finally, the *Wilson* Court adopted the Commissioner's position that the language in SSR 82-14 which states, "[w]hen a finding is made that a claimant has transferable skills, the acquired work skills must be identified", applies only when the ALJ relies solely on the grid in which cases the ALJ must ascertain whether the claimant has transferable skills in order to apply the grid. *Id.*

As noted above, the VE in the present case testified that Plaintiff's past relevant work included skilled work. In addition, the VE testified that an individual with the limitations as described by Judge Armstead could perform about 30,000 light and semi-skilled and 15,000 sedentary and semi-skilled jobs in the economy. Therefore, based on the authority of *Wilson, supra,* the VE was not required to identify Plaintiff's particular transferable skills and the Commissioner did not err by relying on the VE's testimony in determining that Plaintiff is not disabled.

Plaintiff argues next that the Commissioner erred by improperly weighing the medical evidence of record. Plaintiff's position is that the Commissioner should have given less weight to the opinions provided by the state agency physicians and the MA and more weight to the opinions Dr. Gomaa, Dr. Randall, and Dr. Danopulos.

A physician's statement that a claimant is disabled is of course not determinative of the ultimate issue. *See, Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986). A physician's broad conclusory formulations regarding the ultimate issue of disability,

11

which must be decided by the Commissioner, are not determinative of the question of whether an individual is under a disability. *Id.* The weight accorded to a physician's opinion is dependent on whether it is well supported by medically acceptable clinical and laboratory techniques and whether it is inconsistent with the other substantial evidence in the record. *Cf., Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284 (6th Cir. 1994). Stated differently, the Commissioner may properly reject a physician's opinion if it is not supported by sufficient medical data or if it is inconsistent with the other evidence of record. *Cf., Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983). However, the ALJ must provide "good reasons" for discounting treating physicians' opinions, reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242, (6th Cir. 2007)(citation omitted).

In discussing the medical evidence, Judge Armstead noted the general principle that a treating physicians' opinions are sometimes entitled to controlling weight but only if they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with other substantial evidence of record. (Tr. 25-27). Judge Armstead also noted that the Regulations provide that generally more weight is given to the opinions of those who have examined the claimant than to the opinions of sources who have not examined the claimant. (Tr. 27). Judge Armstead then discussed the opinions of Drs. Gomaa, Randall, and Danopulos and explained why he did not accept them in full. (Tr. 27-28).

First, Judge Armstead noted that Dr. Gomaa, who essentially opined that Plaintiff was able to sit/stand/walk for four hours a day, justified that opinion, at least in part, on Plaintiff's having

12

advanced degenerative disc disease in his cervical and lumbar spine. *See,* Tr. 270-71. However, the objective test results do not support that finding. For example, the March, 2005, MRIs of Plaintiff's cervical and lumbar spines revealed minimal and, at worst, mild findings. (Tr. 187, 188). Additionally, the January 25, 2008, MRI of Plaintiff's lumbar spine revealed, at worst, mild findings. (Tr. 642). Dr. Gomaa also justified her opinion on neurological compromise. (Tr. 270). However, a review of Dr. Gomaa's office notes reveals that they are primarily recitations of Plaintiff's subjective complaints and contain few positive clinical findings. For example, when she noted clinical findings, Dr. Gomaa documented, at worst, decreased ranges of motion, some tenderness on palpation, "abnormal sensory", and some muscle spasms. *See, e.g.,* Tr. 293, 299, 454. In contrast, Dr. Gomaa noted in February, 2007, that he had good pain relief with medications; in April, 2007, that he was "doing well" and that his pain medication was "working great"; and in June, 2007, that he demonstrated normal straight leg raising and sensory exams. *See,* Tr. 310, 461, 454, 453, 529.

Judge Armstead also rejected Dr. Randall's opinion that Plaintiff was totally disabled. (Tr. 27). Judge Armstead noted that Dr. Randall provided no specific limitations and that the objective clinical findings did not support Dr. Randall's opinion. *Id.* Indeed, when he opined in October, 2004, that Plaintiff was disabled, Dr. Randall based that opinion in great part on the fact that Plaintiff had recently been hospitalized for treatment of an acute asthma exacerbation and was still on oxygen therapy. *See,* Tr. 221-22. However, the record establishes that Plaintiff's oxygen therapy was subsequently discontinued. In addition, Dr. Randall, who consistently reported that Plaintiff continued to smoke despite his pulmonary impairment, provided few, if any, objective findings to support his opinion. *Id.* Moreover, Dr. Randall's opinion is inconsistent with the

13

pulmonary function study which indicated that although Plaintiff has severe obstructive lung disease there was significant clinical response to bronchodilators. (Tr. 643-46).

Finally, Judge Armstead rejected Dr. Danopulos' opinion that Plaintiff's abilities to perform any work-related activities were "restricted maximally" primarily on the basis that Dr. Danopulos did not provide any specific limitations. (Tr. 27). Further, Dr. Danopulos failed to describe any specific limitations which Plaintiff may have. *Id.*

In contrast to Dr. Gomaa's, Dr. Randall's, and Dr. Danopulos' opinions, the MA testified that the objective clinical findings and test results demonstrated, at worst, mild cervical and lumbar spine findings and a moderate pulmonary impairment as opposed to the severe impairment which the other physicians described. Finally, Drs. Gomaa's, Randall's, and Danopulos' opinions are inconsistent with the reviewing physicians' opinions. (Tr. 174-82).

Under these facts, the Commissioner had an adequate basis for rejecting Dr. Gomaa's, Dr. Randall's, and Dr. Danopulos' opinions.

Plaintiff argues next that the Commissioner erred by failing to consider his impairments in combination.

The Act requires the Commissioner to consider the combined effects of impairments that individually may be nonsevere, but which in combination may constitute a medically severe impairment or otherwise evince a claimant's disability. *Foster v. Bowen,* 853 F.2d 483, 490 (6th Cir. 1988) (citation omitted). A disability may result from multiple impairments, no one of which alone would constitute a full disability. *Loy v. Secretary of Health and Human Services,* 901 F.2d 1306 (6th Cir. 1990). An ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effect of the impairments in combination, where the ALJ specifically refers to a

"combination of impairments" in finding that the plaintiff does not meet the Listings. *Id.* (citation omitted).

A review of Judge Armstead's opinion reveals that he consistently referred to Plaintiff's impairments in the plural. *See, e.g.,* Tr. 18, 21, 24. In addition, Judge Armstead specifically referred to Plaintiff's impairments in combination in determining that he does not satisfy the Listings. (Tr. 21, ¶ 4). Accordingly, the Commissioner did not err by failing to consider Plaintiff's impairments in combination.

The Court's duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

April 29, 2010.

                                                  s/ **Michael R. Merz**
                                                  United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).